**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRY WALKER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  18-3705** |
| | : | |
| **SUPERINTENDENT KATHY** | : | |
| **BRITTAIN,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **August 19, 2020**

   A Philadelphia County jury convicted Terry Walker of murder in the first degree, robbery, and possession of an instrument of a crime.  The trial court sentenced Mr. Walker to life in prison for the murder, plus a consecutive term of ten to twenty years imprisonment for the robbery, and another term of two and a half to five years for the possession of an instrument of crime.  He appealed raising several challenges and both the Pennsylvania Superior Court and Supreme Court denied relief. He petitioned for post-conviction relief arguing constitutionally ineffective assistance of counsel before a new judge who denied post-conviction relief. Following an appeal of the post-conviction order leading to a partial remand on one issue, the new judge held two days of hearings before denying post-conviction relief and the Pennsylvania Superior Court affirmed.  Mr. Walker then *pro se* petitioned this Court for a writ of habeas corpus arguing constitutional defects in his trial and ineffective assistance of counsel.  He raises arguments before us never raised in the state court. After study, we find no basis to disturb the state courts' reasoned findings consistent with the Constitution and established federal law.  We also find no basis for reasonable jurists to disagree with our holding.  We deny Mr. Walker's petition for habeas relief and do not find grounds to issue a certificate of appealability.

I.      **Facts and state court proceedings leading to the habeas petition.**

On January 19, 2005, Terry Walker called Joseph Smith to ask to meet him because Mr. Walker wanted to pay off the debt he owed Mr. Smith.[1] Mr. Smith met with Mr. Walker at the agreed upon location, but Mr. Walker said he did not have the money with him.[2]  Mr. Walker asked Mr. Smith to get in his car, but Mr. Smith declined.[3]

The next day Nathan Robinson drove by the intersection of 70th Street and Woodland Avenue and heard loud bangs coming from the minivan approximately eight feet in front of him and felt something strike his car.[4]  Mr. Robinson watched the van stop and the driver exit the van and look around before getting back into the van to make a U-turn and drive in the opposite direction.[5] Mr. Robinson noted a broken window in the van.[6] Mr. Robinson observed the driver pull the van into a nearby service station, walk around to the passenger side of the vehicle, stuff something down the front of his pants, and walk away slowly before breaking into a run.[7]  The driver left a trail of blood behind him from a gunshot wound on his hand.[8]  The blood trail left by the driver of the van matched Mr. Walker's blood.[9]

When Mr. Robinson approached the van,[10] he found Mr. Smith bleeding and struggling to get up, with his wrists bound by zip ties.[11]  Mr. Robinson called the police.[12]  On the way to the hospital, paramedics monitored Mr. Smith's level of consciousness by asking him informational questions.[13]  Mr. Smith told paramedics eight or nine times "Terry Walker did it" and "tell them Terry Walker shot me."[14]  Mr. Smith lost between a liter and a liter and a half of blood before arriving at the hospital.[15]  Mr. Smith soon lost consciousness and died as a result of nineteen gunshot wounds to his chest, arms, back, thigh, hand, abdomen, and pelvic area.[16]  The shooter held the gun directly on Mr. Smith's back to inflict one of the shots.[17]  The medical

examiner recovered seven bullets from Mr. Smith's body, including two different types of bullets.[18]

That evening, police officers showed Mr. Robinson a photo of Mr. Walker, who he stated he did not recognize.[19]  He explained Mr. Walker's photograph matched the height and build of the man he saw exit the vehicle containing Mr. Smith, but Mr. Robinson explained he could not provide a definitive identification because he only saw the man from the back.[20]

### Conviction and direct appeals.

The jury in the trial presided over by the Honorable Renee Cardwell Hughes of the Philadelphia Court of Common Pleas convicted Mr. Walker of murder in the first degree in the killing of Mr. Smith, robbery by taking Mr. Smith's van by force or threat of force, and possession of an instrument of a crime on March 5, 2007.[21]  Two days later, the jury failed to agree unanimously on a death sentence.[22]  Judge Hughes sentenced Mr. Walker to life imprisonment for the murder charges, plus a consecutive term of ten to twenty years imprisonment for the robbery charges, and another term of two and a half to five years for the possession of an instrument of crime charges.[23] The trial court denied Mr. Walker's post-sentence motion.

Mr. Walker raised four issues in his direct appeal to the Pennsylvania Superior Court: (1) the jury reached a verdict not supported by sufficient evidence; (2) the jury reached a verdict against the weight of the evidence; (3) the trial court should have excluded Mr. Smith's dying declaration; and (4) the trial court erred by not allowing Mr. Walker to impeach the victim's character with proof of conviction of *crimen falsi*.[24]

After Mr. Walker's notice of appeal, the trial court issued an opinion under Pennsylvania Rule of Appellate Procedure 1925(a).  The trial court found the record substantiated Mr.

Walker's convictions, holding the verdict not against the weight of the evidence and the evidence sufficient to sustain the convictions.[25]   It reasoned evidence supported each element of first-degree murder: "(1) a human being was unlawfully killed, (2) the person accused is responsible for the killing, and (3) the accused acted with specific intent to kill."[26]   The trial court reviewed the evidence establishing: Mr. Walker called Mr. Smith to meet him to pay Mr. Smith a debt the day before Mr. Smith's death; upon meeting, Mr. Walker told Mr. Smith he did not have the money and asked him to take a ride with him, and Mr. Smith refused; Mr. Robinson's testimony establishing his observations of the driver of the van and discovery of Mr. Smith, bound and bleeding; Mr. Smith's dying declarations identifying Mr. Walker as the shooter; and the blood trail leaving the van matching Mr. Walker's blood.[27]   The trial court found evidence of nineteen bullet wounds in Mr. Smith, injuring his vital organs, established the specific intent to kill.[28]   The trial court reasoned the jury could properly consider Mr. Walker's running from the scene of the crime as indicia of consciousness of guilt. The trial court found the evidence supported the elements of robbery of the van and possession of an instrument of crime.

As to Mr. Walker's argument the trial court impermissibly admitted Mr. Smith's dying declarations, the trial court explained the hearsay exception of dying declaration applied because all four requirements existed: "the declarant must identify the attacker; the declarant himself believes he is going to die, death is imminent, and death actually results."[29]   The trial court found the nineteen gunshot wounds and loss of almost two liters of blood belied Mr. Walker's claim Mr. Smith did not believe his death imminent.[30]   Mr. Walker also argued Mr. Smith's statement constituted testimonial hearsay violating the Confrontation Clause of the Sixth Amendment of the United States Constitution.[31]   The trial court disagreed, finding Mr. Smith's statements were

non-testimonial because "'the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency.'"[32]

The trial court also rejected Mr. Walker's claim it should have allowed him to impeach the credibility of Mr. Smith through a stipulation to his prior convictions.[33]   The trial court concluded Mr. Smith's robbery conviction—a crime of dishonesty, or "*crimen falsi*," in Pennsylvania—was not relevant due to the inherent reliability of dying declarations and thus not admissible.[34]

The Pennsylvania Superior Court denied Mr. Walker's direct appeal on June 5, 2009 and affirmed the judgment of his sentence.[35]   The Superior Court held Mr. Walker's sufficiency of the evidence challenge only fully addressed the murder conviction, so he waived sufficiency challenges to the convictions of robbery and possession of an instrument of crime.[36] As to the sufficiency challenge to the murder conviction, the Superior Court explained Mr. Walker conceded circumstantial evidence can support the verdict, the jury had sufficient evidence to conclude Mr. Walker shot the victim, and the jury could infer specific intent and malice from the use of a deadly weapon on a vital part of Mr. Smith's body.[37]   The Superior Court rejected Mr. Walker's argument the evidence could not support premeditation. Emphasizing its standard of review, to "view[ ] the evidence of record, together with all reasonable inferences, in the light most favorable to the Commonwealth,"[38] the Superior Court held the eyewitness testimony and ballistic and forensic evidence "was more than sufficient to prove every element of first-degree murder."[39] The Superior Court agreed with the trial court's opinion regarding the proper inference of specific intent to kill from use of a deadly weapon on the victim's body nineteen times at close range.[40]

The Superior Court held Mr. Walker failed to offer decisional or statutory authority in support of his weight of the evidence argument and thus waived this claim.[41]   The Superior Court also concluded the claim lacked merit, as Mr. Walker did not address how the jury's verdict "is so contrary to the evidence as to shock one's sense of justice."[42]   "He fails to present any error or abuse at all, offering only the mere bald assertion that the verdict is not supported by the weight of the evidence and implicitly inviting this Court to re-weigh the evidence in his favor … [T]his is not our function."[43]

Addressing the admission of Mr. Smith's dying declarations, Mr. Walker conceded Pennsylvania law allowed the admission of the dying declarations,[44] but argued the trial court should have excluded the statements as testimonial under *Crawford v. Washington*.[45]   The Superior Court disagreed, but for different reasons than the trial court: The Superior Court held *Crawford* "expressly recognized an historical exception for dying declarations, whether or not they are testimonial."[46]   The Superior Court also cited *Giles v. California*,[47] where the United States Supreme Court confirmed even testimonial dying declarations did not violate the Confrontation Clause: "We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. . . . The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying."[48]

The Superior Court further held the trial court did not abuse its discretion in preventing Mr. Walker from impeaching Mr. Smith's dying declaration with evidence of his conviction of *crimen falsi*.[49]   Mr. Walker contended the trial court exhibited "absolute unwillingness to analyze the pertinent considerations for admissibility" when it did not allow Mr. Walker to introduce Mr. Smith's Maryland robbery conviction from 1994.[50]   Because the conviction

6

occurred more than ten years before the trial, its admissibility turned on whether its probative value substantially outweighed its prejudicial effect to warrant admission.[51]  The Superior Court held the trial court did not err in holding the conviction did not meet the high threshold of impeaching "a crystal clear example of an admissible dying declaration."[52]  Although Mr. Walker argued Mr. Smith's period of confinement ended within ten years of the trial date, the Superior Court concluded the record did not support this alleged end date of confinement.[53]

The Pennsylvania Supreme Court denied Mr. Walker's request for an allowance of appeal on November 25, 2009.[54]

### *Mr. Walker's post-conviction challenges.*

Mr. Walker *pro se* petitioned for post-conviction relief on February 8, 2010.[55]  On April 30, 2012, Mr. Walker's court-appointed counsel filed a "no-merit letter" explaining the claims lacked merit and counsel's examination revealed no other issues of merit.[56]  The post-conviction court notified Mr. Walker of its intent to deny his petition.[57] On December 10, 2012, Mr. Walker's post-conviction counsel filed a new amended petition claiming (1) ineffective assistance of trial counsel for advising Mr. Walker not to testify on the mistaken belief the Commonwealth would impeach him with his prior convictions, and (2) ineffective assistance of trial counsel for failing to object to alleged the prosecutor's alleged prejudicial remarks during opening and closing arguments.[58]  The Honorable Rose M. DeFino-Natasi denied the petition for post-conviction relief on July 8, 2013.[59]

On January 28, 2015, the Pennsylvania Superior Court vacated Judge DeFino-Natasi's post-conviction denial order and remanded for an evidentiary hearing to address only Mr. Walker's claim of ineffective assistance of counsel regarding trial counsel's advice Mr. Walker waive his right to testify.[60]  On June 23 and July 12, 2016, Judge DeFino-Natasi held hearings on

the ineffective assistance of counsel claim.[61]   At the two days of hearings, trial counsel testified he advised Mr. Walker not to testify on his own behalf because he would be too unpredictable on the stand and would offer contradictory stories.[62]   Though Mr. Walker argued trial counsel mistakenly told him he could be impeached with his prior criminal record, the trial attorney testified he did not advise Mr. Walker he could be impeached by such convictions because Mr. Walker did not have convictions of *crimen falsi* with which the Commonwealth could have impeached him.[63]   Trial counsel also testified he informed Mr. Walker he ultimately had to decide whether he wanted to testify or not, and Mr. Walker himself decided not to testify, as indicated by his later colloquy by Judge Hughes.[64]   The post-conviction court announced on the record it found credible the testimony of trial counsel and no basis for the ineffective assistance of counsel claim.[65]

Mr. Walker appealed Judge DeFino-Natasi's ruling on the ineffective assistance of counsel issue and raised two new claims on appeal: (1) ineffective assistance of counsel for failure to challenge the trial court's jury instruction on reasonable doubt, and (2) the trial court's opinion on direct appeal erroneously identified Mr. Walker as the driver of the van with the wounded Mr. Smith inside.[66]   On July 19, 2018, the Pennsylvania Superior Court affirmed Judge DeFino-Natasi finding the counsel's advice was not unreasonable, and denied relief on the two new claims because Mr. Walker did not timely raise them before the post-conviction court.[67] The Superior Court held Mr. Walker waived these claims by failing to raise them before his appeal of the denial of his post-conviction petition.[68]

On February 13, 2019, the Pennsylvania Supreme Court denied Mr. Walker's petition for allowance of appeal on the post-conviction challenges.[69]

**II.   Analysis**

Mr. Walker now timely petitions for habeas relief asking to be discharged from custody and granted a new trial or new evidentiary hearing.  He argues: (1) the jury reached a verdict not supported by sufficient evidence;[70] (2) the jury reached a verdict against the weight of the evidence;[71] (3) the trial court erred when permitting a dying declaration to be read into evidence;[72] (4) the trial court failed to permit Mr. Walker to impeach the victim's character with evidence of his conviction for robbery;[73] (5) ineffectiveness of trial counsel for advising Mr. Walker not to testify on his own behalf and failing to object to the trial court's instruction of reasonable doubt;[74] and (6) the trial court erred by identifying Mr. Walker as the driver of the van in its opinion.[75]

We may only review a habeas petition if the petitioner alleges his imprisonment arising from a state court conviction violates "the Constitution, laws, or treaties of the United States."[76] Congress instructs we "shall not" grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[77] In addressing a petition, we are directed to "look to the highest state court to issue a reasoned opinion and examine its reasoning."[78]

In 18 U.S.C. § 2254(d)(1), Congress defined a state court's decision is "contrary to" clearly established Supreme Court law where the state court incorrectly relied on a "different" law than one controlling the specific issue.[79]  A state court decision applying the applicable Supreme Court law "will rarely be unreasonable"[80] and a federal court can only grant habeas relief if the state court "unreasonably," not just "incorrectly," applied the applicable law to the

set of facts.[81]   There must be "no possibility fair minded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents."[82]

Under section 2254(d)(2), Congress requires the petitioner demonstrate by clear and convincing evidence the state court made an unreasonable determination of fact given the evidence presented.[83]   We afford a similarly high level of deference to the state court's determination of facts as we do in the first prong of section 2254(d) and we "presum[e] [the state court] to be correct."[84] "[A] determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[85]

We may not grant a writ of habeas corpus "unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."[86]   "[A] state prisoner must 'give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'"[87]

A claim is exhausted if the petitioner "fairly presented" it to the state courts.[88] A claim is "fairly presented" if the petitioner "presented the same factual and legal basis for the claim to the state courts."[89]   "In Pennsylvania, a defendant 'exhausts his state remedies for a federal claim either by raising the claim on direct appeal or in a petition for collateral relief under the PCRA.'"[90]   "While failure to exhaust claims usually requires a district court to dismiss a habeas petition without prejudice so that a petitioner can return to state court to exhaust his claims, where state law forecloses review of unexhausted claims—as happens when the PCRA statute of limitations has run—the claims are considered procedurally defaulted."[91]

A claim is procedurally defaulted if the state court refused to review a claim on independent and adequate state procedural grounds unless the petitioner reaches the "cause and prejudice" exception described by the United States Supreme Court in *Coleman v. Thompson*.[92] "A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[93] A state procedural rule is "independent" if it does not "depend[ ] on a federal constitutional ruling."[94] "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'"[95] "[A] discretionary state procedural rule can serve as an adequate ground to bar federal habeas review."[96]

When a claim is procedurally defaulted, federal habeas review is barred unless the petitioner meets the *Coleman* "cause and prejudice" exception and "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice."[97] To establish a fundamental miscarriage of justice, the petitioner must present "new reliable evidence" of his actual innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."[98] Without new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."[99] To bring a "fundamental miscarriage of justice" argument, our Court of Appeals requires petitioners present evidence establishing their "actual innocence" by presenting "new evidence" which would prevent a factfinder from concluding the petitioner is guilty "beyond a reasonable doubt."[100]

We may excuse a procedural default of an ineffective assistance of trial counsel claim where collateral attack counsel in the initial-review collateral proceeding rendered ineffective assistance.[101] To overcome procedural default and argue the claim on its merits, the petitioner must demonstrate: "1) his procedurally defaulted ineffective assistance of trial counsel claim has 'some merit'; and that 2) his state-post conviction counsel was 'ineffective under the standards of *Strickland*.'"[102] We may deem claim substantial, or having "some merit," if "reasonable jurists could debate" it has merit or it is "adequate to deserve encouragement to proceed further."[103] This substantiality inquiry "does not require full consideration of the factual or legal bases adduced in support of the claims."[104]

### A.   Mr. Walker's sufficiency of the evidence challenge is procedurally defaulted because he did not exhaust state court remedies and his claim is now time barred and fails on the merits.

Mr. Walker argues he should be awarded an arrest of judgment on all charges because sufficient evidence did not support the verdict.[105] The Commonwealth argues this claim is procedurally defaulted because, on direct appeal, Mr. Walker raised a different sufficiency of the evidence argument: He conceded the jury had sufficient evidence to determine he shot the victim, and instead argued the evidence did not support the finding of premeditated murder.[106] The Commonwealth also argues Mr. Walker's claim is meritless as sufficient evidence supported the verdict.[107]  We agree with the Commonwealth.

Mr. Walker argues the trial court denied him due process and the right to a fair trial because the Commonwealth "did not prove its case beyond a reasonable doubt."[108]  Mr. Walker states "no evidence whatsoever" supported the verdict he robbed or killed Mr. Smith.[109]  Mr. Walker's arguments include: his presence at the crime scene does not constitute evidence, and his counsel's failure to develop this claim should fall under the "cause and prejudice" exception

to procedural default; Mr. Robinson could not identify Mr. Walker as the person exiting the vehicle with the broken window, instead only testifying he saw an African-American male; Mr. Walker suffered a bullet wound, indicating he was also a victim; and Mr. Smith mentioned Mr. Walker's name to the paramedic out of concern for Mr. Walker's safety, not because Mr. Walker shot him.[110]  He finally disagrees with the Commonwealth's argument he conceded sufficient evidence supported the verdict.[111]

Mr. Walker's claim is procedurally defaulted. Habeas petitioners must first argue their claims in state court before raising them in a section 2254 petition.[112]  In section 2254(b)(1)(A), Congress prevents us from granting federal habeas relief if the petitioner failed to "exhaust[] the remedies" at the state level.[113]  A claim is exhausted if the petitioner "fairly presented" it to the state courts.[114]  A claim is "fairly presented" if the petitioner "presented the same factual and legal basis for the claim to the state courts."[115]  A claim is procedurally defaulted when a petitioner fails to exhaust his state court remedies and the state court would now refuse to review a claim on independent and adequate state procedural grounds.[116]  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and regularly followed.[117]

Mr. Walker has not yet exhausted his state remedies for his sufficiency of the evidence claim because he did not "fairly present" this claim in state court.  Mr. Walker instead argued in state court the evidence did not support the finding of premeditated murder by offering an alternative scenario about an impulsive act after arguing about Mr. Walker's debt to Mr. Smith.[118]  But he "concede[d] that circumstantial evidence is sufficient to support the verdict and that the jury had sufficient evidence to determine that he shot the victim."[119]  He also conceded

specific intent and malice can be inferred from his use of a deadly weapon on a vital part of the victim's body.[120]  Mr. Walker now attempts to change his argument. He did not exhaust this new claim in state court because he did not "present[ ] the same factual and legal basis for the claim to the state courts."[121]

Mr. Walker could no longer bring this claim in state court because it would be time-barred. To be eligible for post-conviction relief in Pennsylvania, Mr. Walker's claim would have to be an "allegation of error [which] has not been previously litigated or waived."[122]  Under 42 Pa. Cons. Stat. § 9545(b)(1), the Pennsylvania General Assembly requires "any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final."[123]  On November 25, 2009, the Pennsylvania Supreme Court denied Mr. Walker's allowance of appeal.[124] Mr. Walker's judgment became final ninety days later, on February 23, 2010.[125]  Because Mr. Walker did not present the same factual and legal basis for the sufficiency of the evidence claim by February 23, 2011, the allegation of error is waived and time-barred in state court.[126]

Mr. Walker argues he meets the *Coleman* "cause and prejudice exception" to this procedural default.[127] "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[128]

Our Court of Appeals instructs a petitioner can show cause for a procedural default if "some objective factor external to the defense [that] impeded … efforts … to comply with the ... procedural rule."[129]  Mr. Walker does not attempt to prove some objective factor prevented him

from bringing this defaulted claim in state court and fails to meet the cause prong of the *Coleman* exception to procedural default.

A petitioner pleads "actual prejudice" for his procedurally defaulted claim where trial counsel's performance contributed to the petitioner's "actual and substantial disadvantage," and "infect[ed] [the petitioner's] trial with error of constitutional dimensions."[130]  Mr. Walker fails to demonstrate actual and substantial damage, as his claim fails on the merits. Mr. Walker also does not show how failure to consider his defaulted claims would result in a fundamental miscarriage of justice.

Mr. Walker's claim fails on the merits because sufficient evidence supported the jury's verdict. On direct appeal, the Pennsylvania Superior Court held Mr. Walker conceded circumstantial evidence can support the verdict, the jury had sufficient evidence to conclude Mr. Walker shot the victim, and the jury could infer specific intent and malice from the use of a deadly weapon on a vital part of Mr. Smith's body.[131]  The Superior Court rejected Mr. Walker's argument the evidence could not support premeditation. Emphasizing its standard of review, to "view[ ] the evidence of record, together with all reasonable inferences, in the light most favorable to the Commonwealth,"[132] the Superior Court held the eyewitness testimony and ballistic and forensic evidence "was more than sufficient to prove every element of first-degree murder."[133] The Superior Court agreed with the trial court's opinion regarding the proper inference of specific intent to kill from use of a deadly weapon on the victim's body nineteen times at close range.[134]

On direct appeal, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."[135]  We "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply

because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"[136]

The Commonwealth presented significant physical evidence of Mr. Walker's guilt, such as reliable eyewitness testimony, a declaration by the victim, Mr. Walker's blood recovered from the scene, and the medical examiner's testimony establishing specific intent to kill.[137]

Mr. Walker's arguments offer alternative hypotheses to explain the evidence, asking us to reweigh the evidence and impermissibly act as a juror. He contends his presence at the crime scene did not constitute evidence; the gunshot wound to his hand indicated his status as a victim; and, Mr. Smith intended to alert paramedics of Mr. Walker's injury, not to identify Mr. Walker as the shooter. He also argues Mr. Robinson failed to identify Mr. Walker as the driver of the van. But even without Mr. Robinson's positive identification of Mr. Walker, the evidence at trial established the blood trail exiting the van matched Mr. Walker's blood. We conclude the Superior Court decision was not objectively unreasonable because a rational trier of fact could agree with the jury on its verdict of guilty based on the evidence presented at trial.[138] We deny Mr. Walker's sufficiency of the evidence claim because it is procedurally defaulted and meritless.

**B.   We deny Mr. Walker's weight of the evidence claim as procedurally defaulted and meritless.**

Mr. Walker argues he must be awarded a new trial for his charge of first-degree murder and robbery because the verdict is against the weight of the evidence. He makes several unsubstantiated claims, arguing the "egregious and unconstitutional misconduct of the Judge" allows us to take judicial notice of this claim and "the entire truth determination process is rendered ineffective" because the detectives who interviewed Mr. Robinson fabricated statements and falsified police reports in other cases.[139] The Commonwealth argues compelling

evidence supports Mr. Walker's guilt on these charges and this claim is not cognizable in federal court.[140]  We agree with the Commonwealth and also note the claim is procedurally defaulted.

On direct appeal, the Pennsylvania Superior Court held Mr. Walker failed to offer decisional or statutory authority in support of his weight of the evidence argument and thus waived this claim.[141]  Because the state court would now refuse to review this claim on independent and adequate state procedural grounds, we may not review the claim.[142]

The Superior Court also concluded the claim lacked merit, as Mr. Walker did not address how the jury's verdict "is so contrary to the evidence as to shock one's sense of justice."[143]  The Superior Court held: "He fails to present any error or abuse at all, offering only the mere bald assertion that the verdict is not supported by the weight of the evidence and implicitly inviting this Court to re-weigh the evidence in his favor … [T]his is not our function."[144]  Considering the previously discussed sufficient evidence produced at trial to support the verdict, we conclude the Superior Court's decision did not result in a decision contrary to or involving an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence.[145]

In addition, a challenge to the weight of the evidence produced at trial is not cognizable in a federal habeas proceeding.[146]  We lack authority to grant habeas relief based on the weight of the evidence because it would "infringe upon the prerogative of the jury to assess creditability."[147]  Federal courts reviewing claims under section 2254 routinely dismiss "weight of the evidence" claims as non-cognizable.[148]  Mr. Walker concedes this deference.[149]  Noting our congressionally-mandated deference to the state court, we preserve the jury's determination of the evidence. We deny habeas relief for Mr. Walker's claim his conviction is against the weight of the evidence.

**C.    The trial court did not unreasonably apply the Constitution or federal law in permitting a dying declaration to be read into evidence.**

Mr. Walker argues the trial court improperly permitted the prosecution to read Mr. Smith's dying declarations to the jury ("Terry Walker did it" and "Tell them that Terry Walker shot me") because "no such statement was ever made by Smith."[150]  The Commonwealth argues the trial court did not act unreasonably for admitting the victim's dying declaration because the trial court correctly applied Supreme Court precedent in admitting the dying declaration.

The Pennsylvania Superior Court determined the trial court properly admitted Mr. Smith's dying declarations.[151] On his direct appeal, Mr. Walker argued the trial court should have excluded Mr. Smith's dying declarations as testimonial under *Crawford v. Washington*. The Superior Court denied his claim, reasoning: "*Crawford* expressly recognizes an historical exception for dying declarations, including declarations that are testimonial."[152] The Superior Court also cited *Giles v. California*, which held even testimonial dying declarations did not violate the Confrontation Clause: "We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. . . . The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying."[153]

The United States Supreme Court in *Crawford* allowed the admission of dying declarations into evidence, even if they are strictly testimonial.[154]  Our Court of Appeals in *United States v. Hendricks* also addressed a court's ability to admit dying declarations as an exception to the general rule testimonial hearsay may only be admitted if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant.[155]

We can grant habeas relief only if the Superior Court "unreasonably" applied the applicable law to the set of facts. The Superior Court correctly applied *Crawford* and *Giles* to Mr. Walker's claim.[156] Mr. Walker characterizes the admission of the dying declaration as a miscarriage of justice and argues he meets the "cause and prejudice" exception.[157]   But the *Coleman* "cause and prejudice" exception we applied above only allows us to determine whether a claim is procedurally defaulted, not whether a claim is meritorious.[158]   We consider the merits and deny this claim.

### D.    The trial court did not unreasonably apply the Constitution or federal law by not permitting Mr. Walker to impeach the victim's character with evidence of a thirteen-year-old robbery conviction.

Mr. Walker asks we take judicial notice his counsel, not he, raised the argument the trial court erred by not permitting him to impeach Mr. Smith's character with evidence of a *crimen falsi* conviction.[159]   Though it is unclear whether Mr. Walker wishes to advance this claim in his petition, we will address it. We interpret this argument as referring to the trial court's decision to preclude admission of the victim's criminal conviction for a 1994 robbery into evidence. The Commonwealth argues this claim is non-cognizable, defaulted, and meritless.  We agree with the Commonwealth.

When reviewing a petition for a writ of habeas corpus, we are limited to hearing alleged violations of the United States Constitution or federal laws.[160]   It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."[161]   Mr. Walker does not allege a violation of the United States Constitution or federal law.  Mr. Walker does not claim the trial court deprived him of his right to due process or a fundamentally fair trial, but instead alleges he is the actual victim and wrongly convicted.

If we interpret Mr. Walker's argument as alleging a violation of his due process rights, his claim fails.  First, Mr. Walker would be procedurally defaulted from presenting a due process claim. While Mr. Walker argued on direct appeal the trial court violated Pennsylvania's rules of evidence for not allowing him to impeach the victim's character, he did not allege violation of his due process rights.[162]  He did not "fairly present" this claim because he failed to "present[] the same factual and legal basis for the claim to the state courts."[163]  His claim, viewed as an allegation of violation of federal due process, is thus defaulted.[164]  He also can no longer bring a federal due process claim in state court because more than a year has passed since his judgment became final.[165]  Mr. Walker's claim contesting the trial court's evidentiary ruling as a violation of his due process rights is procedurally defaulted.

A due process claim also fails on the merits. "[E]videntiary errors of state courts are not considered to be of constitutional proportion and are not cognizable in federal habeas proceedings unless the error deprives a defendant of fundamental fairness in the criminal proceedings."[166]  The Superior Court held the trial court properly excluded Mr. Smith's criminal conviction for a 1994 robbery as a conviction over ten years old is "inadmissible unless its probative value outweighed its prejudicial effect" under the Pennsylvania Rules of Evidence.[167]  We agree—we do not see how an old robbery conviction could have probative value outweighing its prejudicial effect of smearing the victim.  The victim's robbery conviction occurred thirteen years before trial.  The trial court's exclusion of this evidence did not deprive Mr. Walker of fundamental fairness during his criminal trial.  This discretionary evidentiary decision does not rise to the level of a constitutional violation and Mr. Walker's claim based on excluding this evidence fails on the merits.

**E.      Mr. Walker's claims of ineffective assistance of counsel fail.**

Mr. Walker's petition contains two claims of ineffective assistance of counsel by (1) advising him not to testify on his own behalf, and (2) failing to object to the jury instruction concerning reasonable doubt.[168]   Neither claim has merit.

Claims of ineffective counsel are governed by the Supreme Court's two-prong standard of *Strickland v. Washington*.[169]  "Under *Strickland*, a petitioner must first establish that counsel's performance 'fell below an objective standard of reasonableness.' In making this determination, *Strickland* cautioned that courts should be 'highly deferential' when assessing counsel's performance and requires courts to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' Second, a petitioner must show that he was prejudiced by counsel's deficient performance, meaning that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[170]

Where a petitioner claims ineffective assistance of counsel, "review is 'doubly deferential,' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"[171]  We give "wide deference to the state court's conclusions, disturbing them only if the state court unreasonably applied … the prongs of *Strickland*."[172]  We are directed to "afford 'both the state court and the defense attorney the benefit of the doubt.'"[173]

### 1.   Mr. Walker fails to prove constitutionally ineffective counsel in advising him not to testify on his own behalf.

Mr. Walker argues his counsel was ineffective in advising him not to testify on his own behalf at trial due to a mistaken belief the Commonwealth would impeach his testimony with his prior criminal record, and this faulty advice made his decision not to testify unknowing, involuntary, and unintelligent.[174]   The Commonwealth argues we must follow the post-

conviction court's credibility determination trial counsel did not misadvise Mr. Walker.[175]   We deny this claim and need not hold an evidentiary hearing.[176]

Mr. Walker received an evidentiary hearing on this issue in the post-conviction court after the Superior Court vacated the post-conviction court's order and remanded for an evidentiary hearing on the singular claim of ineffective assistance of counsel regarding trial counsel's advice Mr. Walker waive his right to testify.[177]   Judge DeFino-Natasi held evidentiary hearings on June 23 and July 12, 2016.[178]   Trial counsel testified he advised Mr. Walker not to testify on his own behalf because he would be too unpredictable on the stand and would offer contradictory stories.[179]   Though Mr. Walker argued trial counsel mistakenly told him he could be impeached with his prior criminal record, trial counsel testified he did not advise Mr. Walker he could be impeached by such convictions because Mr. Walker did not have convictions of crimes of dishonesty or *crimen falsi*.[180]   Trial counsel also testified he informed Mr. Walker of his right to testify and Mr. Walker himself decided not to testify, as indicated by his later colloquy by Judge Hughes.[181]

The post-conviction court found the trial counsel's testimony credible and denied relief based on ineffective assistance of counsel.[182]   The Superior Court affirmed the post-conviction court's ruling, finding the counsel's advice was not unreasonable.[183]

An ineffective assistance of counsel has two elements: (1) deficient performance and (2) prejudice.[184] A lawyer performs "deficiently" when he or she does not defend the client in the way a reasonable lawyer would.[185]   A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel."[186] Prejudice requires the petitioner to demonstrate, but for the trial lawyer's errors, the result of the trial would have been more

favorable to the defendant.[187]  Prejudice "requires a substantial, not just conceivable, likelihood of a different result."[188]

If a state court has denied a claim on its merits, we may grant relief only if the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[189]  This is a "difficult to meet and highly deferential standard … which demands … state-court decisions be given the benefit of the doubt."[190]  State court factual determinations "are presumed correct absent clear and convincing evidence to the contrary."[191]

Mr. Walker argues he suffered prejudice because he would have been "acquitted as an innocent man, who was also the victim" if he had the opportunity to testify on his own behalf.[192]  The post-conviction court held two days of evidentiary hearings before finding trial counsel credible and acted reasonably in advising Mr. Walker not to testify.[193]  The Superior Court found the post-conviction court did not err in her credibility determinations or in dismissing Mr. Walker's claim.[194]  Deferring to the state court's credibility determinations and without clear and convincing evidence to the contrary, we agree.[195]

Mr. Walker does not prove the trial court's decision constituted an unreasonable application of federal law or was contrary to federal established law. We have no basis to hold the state courts erred in finding Mr. Walker made the decision not to testify on his own behalf after a full consultation with counsel.[196]  Mr. Walker provides no reason to overturn the state court decision. The Superior Court did not unreasonably apply the prongs of *Strickland* in its denial of Mr. Walker's ineffective assistance of counsel claim.[197]  We deny his claim.

> **2.      Mr. Walker's claim his trial counsel was ineffective for failing to object to the trial court's instruction of reasonable doubt is procedurally defaulted.**

Mr. Walker claims his trial counsel provided constitutionally ineffective assistance by failing to object to the trial court's reasonable doubt jury instruction. He failed to raise this claim before the post-conviction court so the Superior Court found the claim procedurally defaulted. Because his claim is procedurally defaulted, Mr. Walker requests we apply the *Martinez* exception to procedural default.[198]  This exception does not apply because Mr. Walker's post-conviction counsel was not ineffective in failing to raise the claim in a timely manner.  We deny Mr. Walker's claim of ineffective assistance of counsel.

In Mr. Walker's trial, Judge Hughes provided a jury instruction on reasonable doubt which included a hypothetical question regarding a loved one in the hospital getting a second or third medical opinion on a life-threatening condition.[199]  Judge Hughes instructed the jury members to consider they would do everything in their power to research a life-threatening condition of a loved one before they deciding on a proper treatment plan.[200]  She emphasized individuals caring for their loved ones would only move forward with treatment because they have "moved beyond all reasonable doubt."[201]  At the time of Mr. Walker's trial, several courts had upheld similar reasonable doubt jury instructions as proper.[202]

On August 11, 2017, the Honorable Gerald A. McHugh in *Brooks v. Gilmore* granted a petition for a writ of habeas corpus based on ineffective assistance of counsel for failing to object to the same jury charge given by Judge Hughes, defining reasonable doubt "by means of an emotionally charged example weighted in favor of *resolving* doubt for the purpose of providing life-saving care to a loved one."[203] Judge McHugh concluded it was "reasonably likely that the

jury would have applied a standard lower than reasonable doubt when given this hypothetical."[204]  In *Brooks*, the prosecution introduced no physical evidence of the petitioner's guilt—only the testimony of a questionable, intoxicated eyewitness and who gave the police contradictory statements.[205]  Judge McHugh held the petitioner's trial counsel's failure to object to the reasonable doubt charge constituted *Strickland* deficiency and prejudice resulted because the prosecution introduced no physical evidence for the jury to consider, rendering the jury instruction especially important.[206]

Unlike *Brooks*, Mr. Walker's claim is procedurally defaulted.  Mr. Walker's post-conviction counsel filed the amended petition challenging Judge Hughes's jury instructions when the post-conviction court had the original petition on remand solely to conduct evidentiary hearings regarding Mr. Walker's waiver of his right to testify on his own behalf. Though Mr. Walker's counsel filed the amended petition within weeks of the *Brooks* decision,[207] the Superior Court determined Mr. Walker waived this claim because he did not timely raise it before the post-conviction court.[208]  "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim.[209] As such, independent and adequate state grounds preclude Mr. Walker from raising these claims on federal habeas review unless he meets the *Martinez* exception to procedural default.[210]

### a.   Mr. Walker does not meet the *Martinez* exception to procedural default.

Mr. Walker argues we can hear his claim under the *Martinez* exception to procedurally defaulted claims. The Commonwealth argues Mr. Walker cannot meet this exception because his post-conviction counsel did not render ineffective assistance and the underlying claim of trial counsel's ineffectiveness lacks merit. We partially agree with the Commonwealth and hold Mr. Walker's claim procedurally defaulted.

The Supreme Court provided defendants with the opportunity to have defaulted ineffective assistance of trial counsel claims heard on the merits under *Martinez v. Ryan*.[211]  To overcome procedural default and argue the claim on its merits, the petitioner must demonstrate: "1) his procedurally defaulted ineffective assistance of trial counsel claim has 'some merit'; and that 2) his state-post conviction counsel was 'ineffective under the standards of *Strickland*.'"[212]

To satisfy the first prong of *Martinez*, Mr. Walker must show the claim is substantial, or "has some merit."[213]  Whether a claim is "substantial" or has "some merit" is a "less exacting" standard than the prejudice prong of *Strickland*.[214]  We may deem a claim substantial if "reasonable jurists could debate" it has merit or it is "adequate to deserve encouragement to proceed further."[215]  This substantiality inquiry "does not require full consideration of the factual or legal bases adduced in support of the claims."[216]  Mr. Walker's underlying claim of ineffective assistance of counsel "has some merit" because reasonable jurists have debated its merit.  While Judge McHugh's decision in *Brooks* found the reasonable doubt jury instruction violated the petitioner's due process rights,[217] other judges have disagreed.

In a recent report and recommendation in *Baxter v. McGinley*, the Honorable Timothy R. Rice evaluated the same jury instruction.[218]  Judge Rice explained the jury instruction did not violate the Constitution because, considering the entire charge, and not just the illustrative medical opinion portion "in isolation,"[219] a reasonable jury would understand the government bears the burden of proving a defendant's guilty beyond a reasonable doubt.[220]  Citing Judge Reuter's reasoning in the report and recommendation in *Corbin v. Tice*,[221] Judge Rice found the jury instruction contained a proper[222] description of reasonable doubt before the illustrative example: "[R]easonable doubt is a doubt that would cause a reasonably careful and sensible person to pause, to hesitate, or to refrain from acting upon a matter of the highest importance in

their own affairs or their own interests."[223] Judge Rice concluded "although the instruction is inartful and its illustration inapt, it does not violate due process … because there is no 'reasonable likelihood that the jury applied it unconstitutionally.'"[224]  Because reasonable jurists can and have debated the merits of the underlying claim, Mr. Walker satisfies the first prong of *Martinez*.

To satisfy the second prong of *Martinez*, Mr. Walker must demonstrate his post-conviction counsel's failure to raise ineffective assistance of trial counsel itself constituted ineffective assistance of counsel under *Strickland*.[225] Our Court of Appeals instructs us to evaluate only the first *Strickland* requirement of deficient performance in this analysis, as the finding of "some merit" of the underlying ineffectiveness claim satisfies *Strickland*'s second requirement providing deficient performance must also result in prejudice.[226]

Mr. Walker must prove his post-conviction counsel's performance fell below an objective standard of reasonableness to demonstrate deficient performance.[227]  When an attorney pursues some claims and declines to pursue others, a strong presumption weighs in favor of concluding the decision a tactical choice.[228]  But "this presumption is not invincible: A petitioner may rebut the suggestion that the challenged conduct reflected merely a [tactical] choice ... by showing that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[229]

Mr. Walker's post-conviction counsel demonstrated diligent efforts in litigating Mr. Walker's case, and the counsel's efforts did not fall "outside the wide range of professionally competent assistance."[230] Upon court appointment, Mr. Walker's post-conviction counsel filed a amended petition claiming (1) ineffective assistance of trial counsel for advising Mr. Walker not to testify on the mistaken belief the Commonwealth would impeach him with his prior

convictions and (2) failing to object to alleged prosecutorial misconduct.[231] Mr. Walker's post-conviction counsel raised the claims he believed were most vital and succeeded in obtaining a remand for an evidentiary hearing on the ineffective assistance of trial counsel claim for advising Mr. Walker not to testify on his own behalf at trial.[232]  Post-conviction relief counsel need not bring all possible claims; instead, counsel can focus on the claims most likely to prevail.[233]  Post-conviction counsel's success in achieving remand for an evidentiary hearing belies any argument he "pursue[ed] issues that were clearly and significantly weaker" than the reasonable doubt jury instruction ineffective assistance of trial counsel claim.[234]

Mr. Walker's post-conviction counsel could not have omitted "significant and obvious issues" regarding the jury instruction in front of the post-conviction court because, at the time, no court had found the jury instruction improper. To the contrary, several courts had held the jury instruction proper when post-conviction counsel could have timely raised the claim.[235]  Post-conviction counsel's inability to predict future groundbreaking decisions does not fall below an objective standard of reasonableness to demonstrate deficient performance.

Judge McHugh's *Brooks* decision questioning the constitutionality of Judge Hughes's reasonable doubt jury instruction came out on August 11, 2017, over a year after the post-conviction court conducted evidentiary hearings on a distinct ineffective assistance of counsel claim on limited remand from the Superior Court. Post-conviction counsel filed an amended petition within two weeks of the *Brooks* decision, but the Superior Court had already issued a limited remand. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[236] Mr.

Walker's post-conviction counsel's actions were reasonable at the time of his challenged conduct and Mr. Walker fails to meet the *Martinez* exception to procedural default.

Because an adequate and independent state court finding of procedural default precludes us from considering Mr. Walker's claim, and Mr. Walker fails to reach the *Martinez* exception to procedural default, we may not reach the merits of Mr. Walker's claim of ineffective assistance of trial counsel. We deny his claim.

### F.   Mr. Walker's claim the trial court erred by identifying him as the driver is procedurally defaulted and meritless.

Mr. Walker argues the trial court erred by identifying him as the "driver of the vehicle" in its direct appeal opinion because no evidence supported this statement.[237]  Mr. Walker argues Mr. Robinson failed to identify him as the driver of the vehicle when police showed him Mr. Walker's photograph.[238]  The Commonwealth argues Mr. Walker's claim the trial court opinion included a factual error is erroneous, and his claim is procedurally defaulted and not cognizable. In his reply, Mr. Walker argues the Commonwealth "concede[d]" Mr. Robinson could not identify the shooter for the first time, and all previous courts relied on the Commonwealth's "false conclusion."[239]  We agree with the Commonwealth and deny Mr. Walker's claim.

Mr. Walker's claim is procedurally defaulted. Mr. Walker first raised this claim after the post-conviction court denied his claims and the Superior Court remanded for an evidentiary hearing on one ineffective assistance of counsel claim on Mr. Walker's waiver to testify on his own behalf.  The Superior Court held Mr. Walker waived this claim because he did not raise it in the post-conviction court below and this claim went beyond the scope of their limited remand.[240] Because the state court would now refuse to review the claim on independent and adequate state procedural grounds, Mr. Walker's claim is procedurally defaulted.[241]

Mr. Walker's procedurally defaulted claim does not reach the *Coleman* "cause and prejudice" exception allowing us to consider its merits. The procedurally defaulted claims can be heard only if he demonstrates: (1) a legitimate cause for the default and actual prejudice from the alleged constitutional violation; or (2) a fundamental miscarriage of justice from a failure to review the claim.[242]  Mr. Walker fails to demonstrate a legitimate cause for the default and actual prejudice and he does not assert a fundamental miscarriage of justice occurred. Mr. Walker does not claim his constitutional rights were violated. Mr. Walker generally contests the facts of the case without linking the alleged factual error to new evidence presented.

Mr. Walker's claim also lacks merit. When reviewing a petition for a writ of habeas corpus, we are limited to hearing alleged violations of the United States Constitution or federal laws.[243]  Mr. Walker does not argue the trial court's alleged error violated a federal law or the Constitution.  In addition, we may not grant habeas relief unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[244]  The trial court's opinion identifying Mr. Walker as the driver of the van containing an injured Mr. Smith was not an unreasonable determination of the facts in light of the DNA evidence linking Mr. Walker to the blood found outside the van and Mr. Smith's dying declaration implicating Mr. Walker in his shooting.  Mr. Robinson's inability to identify Mr. Walker's photograph, when he only saw the driver in the van from behind at a distance, does not require a contrary determination.[245]

Mr. Walker's argument the Commonwealth misled the courts by perpetrating a "false conclusion" misses the point: The Commonwealth introduced sufficient evidence for the jury to conclude the man Mr. Robinson witnessed exiting the van was Mr. Walker. On direct appeal, the Superior Court explained the driver was "later identified" as Mr. Walker, indicating other

evidence, such as DNA evidence, tied Mr. Walker to the eyewitness testimony.[246]   The trial

court's description of the facts does not rise to the level of an "unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."[247]   We deny Mr. Walker's

claim as it fails on the merits and is procedurally defaulted.

### G.   We deny a certificate of appealability.

"[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal

a district court's denial of his petition."[248]   Section 2253 provides the standard for a certificate of

appealability required for appellate review of a district court's judgment denying habeas relief:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district
> judge, the final order shall be subject to review, on appeal, by the court of appeals for
> the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity
> of a warrant to remove to another district or place for commitment or trial a person
> charged with a criminal offense against the United States, or to test the validity of
> such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may
> not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention
>> complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant
> has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific
> issue or issues satisfy the showing required by paragraph (2).[249]

A certificate of appealability "will issue only if the requirements of § 2253 have been

satisfied."[250]   A habeas petitioner seeking a certificate of appealability "need only demonstrate 'a

substantial showing of the denial of a constitutional right.'"[251]   A petitioner "satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." [252]

Federal Rule of Appellate Procedure 22 contemplates a district court issuing a certificate of appealability in the first instance:

> (b) Certificate of Appealability. (1) In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c). If an applicant files a notice of appeal, the district clerk must send to the court of appeals the certificate (if any) and the statement described in Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2254 or § 2255 (if any), along with the notice of appeal and the file of the district-court proceedings. If the district judge has denied the certificate, the applicant may request a circuit judge to issue it.[253]

Given the standard we apply today to habeas challenges to state trial court evidentiary rulings and ineffectiveness of counsel, we cannot find jurists of reason could disagree with our reasoning in denying the petition.  Mr. Walker has not met his burden in showing a reasonable jurist would disagree with the denial of the petition based on the objections.

## III.    Conclusion

We deny Mr. Walker's petition for habeas relief asking to be discharged from custody and granted a new trial or new evidentiary hearing.  Mr. Walker argued the verdict is not supported by sufficient evidence; the verdict is against the weight of the evidence; the trial court erred when it permitting a dying declaration to be read into evidence; the trial court failed to permit Mr. Walker to impeach the victim's character with evidence of his conviction for robbery; ineffectiveness of trial counsel for advising Mr. Walker not to testify on his own behalf and failing to object to the trial court's instruction of reasonable doubt; and the trial court erred by identifying Mr. Walker as the driver of the van in its opinion. Each of Mr. Walker's claims fails, as they either lack merit, face procedural default, or both. We deny Mr. Walker's petition for a

writ of habeas corpus and his request for an evidentiary hearing.  We further find no basis to issue a certificate of appealability.

---

[1] Notes of Testimony ("N.T.") February 26, 2007 Trial at 120-123.

[2] *Id*. at 122.

[3] *Id*.

[4] N.T. February 27, 2007 Trial at 36-38.

[5] *Id.* at 40-43.

[6] *Id.*

[7] *Id.* at 40-47.

[8] N.T. February 26, 2007 Trial at 65-72; N.T. February 27, 2007 Trial at 45-47.

[9] N.T. February 28, 2007 Trial at 54-56; N.T. March 1, 2007 Trial at 33.

[10] N.T. February 27, 2007 Trial at 47-48.

[11] *Id*. at 48, 52-54.

[12] *Id.* at 51.

[13] *Id.* at 106-07.

[14] *Id.* at 48, 106-07, 130.

[15] *Id.* at 108-09.

[16] N.T. February 28, 2007 Trial at 73, 75-83.

[17] *Id.* at 81, 87-88.

[18] N.T. March 1, 2007 Trial at 114.

[19] *Id*. at 175-77.

[20] *Id*. at 176-77.

[21] ECF Doc. No. 28 at 5.

[22] *Id.*

[23] *Id.*

[24] ECF Doc. 28-1 at 4 (Exhibit A; *Commonwealth v. Walker*, 981 A.2d 325 (Pa. Super. Ct. 2009)). *Crimen falsi* are crimes of dishonesty. *Commonwealth v. LaMassa*, 532 A.2d 450 (Pa. Super. Ct. 1987).

[25] ECF Doc. No. 21 at 26-30.

[26] *Id.* at 27 (citing 18 Pa.C S. § 2502; *Commonwealth v. Spotz*, 759 A.2d 1280, 1283 (Pa. 2000)).

[27] *Id.* at 27-28.

[28] *Id.* at 28.

[29] *Id.* at 24 (*Commonwealth v. Levanduski*, 907 A.2d 3, 15 (Pa. Super. Ct. 2006) (citation omitted)).

[30] *Id.*

[31] *Id.*

[32] *Id.* at 25 (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

[33] *Id.* at 25-26.

[34] *Id.* at 26.

[35] ECF Doc. 28-1 at 2.

[36] *Id.* at 6.

[37] *Id.* at 8-9.

[38] *Id.* at 9 (citing *Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007)).

[39] *Id.*

[40] *Id.* at 10.

[41] *Id.* at 11.

[42] *Id.* (citing *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008)).

[43] *Id.* at 13.

[44] *Id.* at 14.

[45] 541 U.S. 36 (2004).

[46] ECF Doc. 28-1 at 14.

[47] 554 U.S. 353 (2008).

[48] ECF Doc. 28-1 at 14; *Giles*, 554 U.S. at 358.

[49] ECF Doc. 28-1 at 15.

[50] *Id.* at 17.

[51] Pa. R.E. 609(a)-(b).

[52] ECF Doc. 28-1 at 18.

[53] *Id.*

[54] *Commonwealth v. Walker*, 983 A.2d 1249 (Pa. 2009).

[55] ECF Doc. No. 21 at 3.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* Judge Hughes had since retired from the trial court.

[60] ECF Doc. No. 28-1 at 37 (Exhibit B; *Commonwealth v. Walker*, 110 A.3d 1000 (Pa. Super. Ct. 2015) (noting remand limited to an evidentiary hearing only on the issue of counsel's advice and the court could not review any claim outside of its limited remand)).

[61] EC Doc. No. 21 at 3.

[62] ECF Doc. No. 28-1 at 47 (Exhibit C; N.T. August 9, 2016 PCRA Hearing at 15).

[63] *Id.* at 45 (N.T. August 9, 2016 PCRA Hearing at 7-8).

[64] *Id.* at 46 (N.T. August 9, 2016 PCRA Hearing at 9-10).

[65] *Id*. at 45-46 (N.T. August 9, 2016 PCRA Hearing at 7-10).

[66] ECF Doc. No. 28 at 6.

[67] ECF Doc. No. 28-1 at 56 (Exhibit D; *Commonwealth v. Walker*, 194 A.3d 687 (Pa. Super. Ct. 2018)).

[68] *Id*. at 64.

[69] *Commonwealth v. Walker*, 202 A.3d 48 (Pa. 2019).

[70] ECF Doc. No. 21 at 7.

[71] *Id*. at 11.

[72] *Id*. at 12.

[73] *Id*. at 14; ECF Doc. No. 28-1 at 15.

[74] ECF Doc. No. 21 at 14, 16.

[75] *Id*. at 18.

[76] *Mitchell v. Superintendent Dallas SCI*, 902 F.3d 156, 163 (3d Cir. 2018) (citing 28 U.S.C. § 2254(a)).

[77] 28 U.S.C. § 2254(d).

[78] *Gibbs v. Adm'r New Jersey State Priso*n, No. 18-2691, 2020 WL 2537652, at *2 n.6 (3d Cir. May 19, 2020) (citing *Wilson v. Sellers*, --- U.S.----, 138 S.Ct. 1188, 1192, 200 L.Ed.2d 530 (2018)). We "look through" higher state courts' unexplained decisions to the last reasoned decision and make a rebuttable presumption that higher courts adopted this rationale. *Wilson*, 138 S.Ct. at 1193.

[79] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (explaining the "contrary to" clause applies "if the state court applies a rule different from the governing law set forth in [the United States Supreme Court's] cases, or if it decides a case differently than [the Court] ha[s] done on a set of materially indistinguishable facts.").

[80] *Williams v. Taylor*, 529 U.S. 362, 389 (2000).

[81] *Bell*, 535 U.S. at 694; *accord Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Williams*, 529 U.S. at 389 (Federal habeas review of a state court decision under section 2254 is highly deferential to the state court, and a federal court can only overturn the decision if it is "firmly convinced" the state court's decision amounted to a constitutional violation).

[82] *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam).

[83] 28 U.S.C. § 2254(e)(1).

[84]*Eley,* 712 F.3d at 846; 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *see also Lewis v. Horn*, 581 F.3d 92, 111 (3d Cir. 2009) (explaining this presumption of correctness applies to factual determinations of both state trial and appellate courts).

[85] 28 U.S.C. § 2254(e)(1).

[86] *Id.* § 2254(b)(1).

[87] *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

[88] *Id.* (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan*, 526 U.S. at 848; *Cristin v. Brennan*, 281 F.3d 404, 410 (3d Cir. 2002); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996)).

[89] *Id.*

[90] *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *Wilkerson v. Superintendent*, 871 F.3d 221, 228-29 (3d Cir. 2017)).

[91] *Coker v. DelBaso*, No. 18-3385, 2020 WL 1816084, at *10 (E.D. Pa. Apr. 10, 2020) (citing *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000)).

[92] *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017).

[93] *Walker v. Martin,* 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)).

[94] *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

[95] *Walker*, 562 U.S. at 316 (quoting *Kindler*, 558 U.S. at 60-61) (footnote omitted).

[96] *Kindler*, 558 U.S. at 60.

[97] *Coleman*, 501 U.S. at 735 n.1.

[98] *Schlup v. Delo*, 513 U.S. 298, 321-24 (1995).

[99] *Id.* at 316.

[100] *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002).

[101] *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

[102] *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019).

[103] *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 377 (3d Cir. 2018).

[104] *Id*.

[105] ECF Doc. No. 21 at 7.

[106] ECF Doc. No. 28-1 at 9.

[107] ECF Doc. No. 28 at 15.

[108] ECF Doc. No. 21 at 7.

[109] *Id*. at 7-11.

[110] *Id*.

[111] *Id*. at 10-11.

[112] *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007).

[113] 28 U.S.C. § 2254(b)(1)(A).

[114] *Nara*, 488 F.3d at 197 (citing *Baldwin,* 541 U.S. at 29; *O'Sullivan*, 526 U.S. at 848; *Cristin*, 281 F.3d at 410; *Doctor*, 96 F.3d at 678).

[115] *Id.*

[116] *See Coleman,* 501 U.S. at 735 n.1; *Bey,* 856 F.3d at 236.

[117] *Walker,* 562 U.S. at 316.

[118] ECF Doc. No. 28-1 at 9.

[119] *Id*. at 8-9 (finding the evidence, including eyewitness testimony, ballistic and forensic evidence, viewed in the light most favorable to the Commonwealth, more than sufficient to prove every element of first-degree murder).

[120] *Id*. at 9.

[121] *Nara*, 488 F.3d at 197.

[122] 42 Pa. Cons. Stat. § 9543(a)(3).

[123] *Id.* § 9545(b)(1).

[124] *Commonwealth v. Walker*, 983 A.2d 1249 (Pa. 2009).

[125] *See Commonwealth v. Miller*, 102 A.3d 988 (Pa. Super. Ct. 2014) (quoting 42 Pa. Cons. Stat. § 9545(b)(3) ("judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.")); *see also* Pa. Sup. Ct. R. 13.1 (where a petition for allowance of appeal to the Supreme Court of Pennsylvania was filed, judgment of sentence becomes final 90 days after the Supreme Court either denied the petition or granted the petition and rendered a decision).

[126] 42 Pa. Cons. Stat. § 9543(a)(3).

[127] ECF Doc. No. 21 at 7.

[128] *Coleman,* 501 U.S. at 750.

[129] *Leyva*, 504 F.3d at 366; *see Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004).

[130] *Albrecht v. Horn*, 485 F.3d 103, 124 n.7 (3d Cir. 2007).

[131] ECF Doc. 28-1 at 8-9.

[132] *Id*. at 9 (citing *Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007)).

[133] *Id*.

[134] *Id*. at 10.

[135] *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

[136] *Id*.

[137] N.T. February 27, 2007 Trial at 103; N.T. Trial March 1, 2007 at 26, 135.

[138] *Coleman*, 566 U.S. at 651.

[139] ECF Doc. No. 21 at 11.

[140] ECF Doc. No. 28 at 16-18.

---

[141] ECF Doc. No. 28-1 at 11.

[142] *See Coleman,* 501 U.S. at 735 n.1; *Bey,* 856 F.3d at 236.

[143] ECF Doc. No. 28-1 at 11 (citing *Commonwealth v. Diggs,* 949 A.2d 873, 879-880 (Pa. 2008)).

[144] *Id.* at 13.

[145] 28 U.S.C. § 2254(d).

[146] *Woodruff v. Williams,* No. 14-1146, 2016 WL 8257719, at *7 (E.D. Pa. Nov. 30, 2016) (explaining the United States Supreme Court recognizes a challenge to the *sufficiency* of the evidence supporting a conviction implicates the Due Process Clause, providing a potential basis for federal habeas relief under 28 U.S.C § 2254. An assertion a state conviction is *against the weight of* the evidence adduced at trial, however, does not implicate the Constitution in the same manner), *report and recommendation adopted,* 2017 WL 617008 (E.D. Pa. Feb. 15, 2017); *see also Ramos v. Collins,* No. 13-433, 2013 WL 5429285, at *1 (E.D. Pa. June 28, 2013) ("A weight of the evidence claim requires an evaluation of the credibility of the evidence presented at trial and a state court's credibility findings are binding on a federal habeas court… Thus, it is well established that a challenge to the weight of the evidence produced at trial is not cognizable in a federal habeas corpus proceeding."), *report and recommendation adopted sub nom.,* 2013 WL 5429305 (E.D. Pa. Sept. 27, 2013).

[147] *Woodruff,* 2016 WL 8257719, at *6.

[148] *Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir. 1985).

[149] ECF Doc. No. 21 at 11.

[150] *Id.* at 12-13.

[151] ECF Doc. No. 28-1 at 13-14.

[152] *Id.* at 14.

[153] *Id.*; *Giles v. California,* 554 U.S. 353, 358 (2008).

[154] *Crawford,* 541 U.S. at 56 n.6.

[155] *United States v. Hendricks,* 395 F.3d 173, 179 (3d Cir. 2005).

[156] *Bell,* 535 U.S. at 694; *Eley,* 712 F.3d at 846; *see Williams,* 529 U.S. at 389 (Federal *habeas* review of a state court decision under section 2254 is highly deferential to the state court, and a

federal court can only overturn the decision if it is "firmly convinced" the state court's decision amounted to a constitutional violation).

[157] ECF Doc. No. 21 at 13.

[158] *Coleman,* 501 U.S. at 750.

[159] ECF Doc. No. 21 at 14; ECF Doc. 28-1 at 15.

[160] 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[161] *Estelle*, 502 U.S. at 68.

[162] ECF Doc. No. 18 at 19.

[163] *Nara*, 488 F.3d at 197 (citing *Baldwin,* 541 U.S. at 29; *O'Sullivan*, 526 U.S. at 848; *Cristin*, 281 F.3d at 410; *Doctor*, 96 F.3d at 678).

[164] *Keller v. Larkins*, 251 F.3d 408, 414 (3d Cir. 2001) (holding the claim was procedurally defaulted where the petitioner "did not give the state courts 'fair notice' that he was asserting a federal constitutional claim rather than a claim that the trial court violated state rules of evidence.").

[165] 42 Pa. Con. Stat. § 9545(b)(1).

[166] *Bisaccia v. Attorney Gen. of State of New Jersey*, 623 F.2d 307, 312 (3d Cir. 1980), *cert. denied*, 499 U.S. 1042 (1980) (citing *Donnelley v. DeChristoforo*, 416 U.S. 637 (1974)); 42 Pa. Cons. Stat. § 9543(a)(3) (To raise a cognizable claim, a Post-Conviction Relief Act petitioner must prove his claim is not previously litigated or waived).

[167] ECF Doc. No. 21 at 17-18; ECF Doc. 28-1 at 16.

[168] ECF Doc. No. 21 at 14-18.

[169] 466 U.S. 668 (1984).

[170] *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 688-89, 694).

[171] *Woods v. Etherton*, --- U.S. ----, 136 S.Ct. 1149, 1151 (2016) (quoting *Burt v. Titlow*, 571 U.S. 12, 22 (2013)) (internal citation omitted).

[172] *Elias v. Superintendent Fayette SCI*, 774 F. App'x 745, 750 (3d Cir. 2019) (quoting *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 546-47 (3d Cir. 2014)).

---

[173] *Id.* (quoting *Burt*, 571 U.S. at 15).

[174] ECF Doc. No. 21 at 14.

[175] ECF Doc. No. 28 at 20.

[176] In *United States v. Scripps*, our Court of Appeals remanded to the district court for an evidentiary hearing on the defendant's section 2255 petition asserting ineffective assistance of counsel for advising Mr. Scripps to not speak during sentencing. Our Court of Appeals held we "must hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Scripps*, 961 F.3d at 631-632. Unlike in *Scripps*, Mr. Walker had a two-day evidentiary hearing before the Post-Conviction Relief Act court where his trial counsel testified as to his trial strategy. In addition, the factual record and briefing before us "conclusively show [Mr. Walker] is entitled to no relief." *Id.* We do not believe further factual development is necessary and, under *Scripps*, we need not hold an evidentiary hearing.

[177] ECF Doc. No. 28-1 at 37 (noting remand was limited to an evidentiary hearing only on the issue of counsel's advice and the court could not review any claim outside of its limited remand)).

[178] *Id.* at 56.

[179] *Id.* at 47 (N.T. August 9, 2016 PCRA Hearing at 15).

[180] *Id.* at 45 (N.T. August 9, 2016 PCRA Hearing at 7-8).

[181] *Id.* at 46 (N.T. August 9, 2016 PCRA Hearing at 9-10).

[182] *Id.* at 46 (N.T. August 9, 2016 PCRA Hearing at 10).

[183] *Id.* at 63.

[184] *Strickland*, 466 U.S. at 686.

[185] *Id.* at 681.

[186] *Burger v. Kemp*, 483 U.S. 776, 794 (1987).

[187] *Strickland*, 466 U.S. at 694.

[188] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

[189] 28 U.S.C. § 2254(d).

[190] *Cullen*, 563 U.S. at 181.

[191] *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).

[192] ECF Doc. No. 21 at 15.

[193] ECF Doc. No. 28-1 at 46 (N.T. August 9, 2016 PCRA Hearing at 10).

[194] *Id.* at 63.

[195] *Davis v. Ayala*, 576 U.S. 257, 302 (2015) (holding courts defer credibility findings to state court not only because of trial judges' proximity to courtroom events, but also because of the expectations regarding the procedures used in the proceedings that they oversee).

[196] ECF Doc. No. 28-1 at 60; *see Smith v. Robbins*, 528 U.S. 259, 288 (2000) (holding post-conviction counsel does not need to raise every non-frivolous claim. They select which claims are most likely to be successful on appeal).

[197] *Elias,* 774 F. App'x at 750.

[198] *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

[199] N.T. March 2, 2007 Trial at 51-52.  The jury instruction provided:

> Ladies and gentlemen, the Commonwealth, proof beyond a reasonable doubt, proving that the defendant Terry Walker is guilty. But this does not mean that the Commonwealth must prove its case beyond all doubt. The Commonwealth is not required to prove its case to a mathematical certainty. The Commonwealth is not required to demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a careful and sensible person to pause, to hesitate, or to refrain from acting upon a matter of the highest importance to that person's affairs.

> Ladies and gentlemen, let me give you an example of reasonable doubt. Now I had the great good fortune to talk with each one of you individually. And I know that each one of you loves someone special: A child, a spouse, a significant other. There is someone in each one of your lives that you're absolutely passionate about. They're very important to you. Think for a moment, hypothetically, if that loved one were told by their physician that they had a life-threatening condition and that the only treatment for that life-threatening condition was a medical surgery, a surgery that they don't know a whole lot about -- now, if you're like me, you're going to get a second opinion, you're going to get a third opinion. You want to know everything you can possibly know about this condition, what are the appropriate medical protocols for. Is surgery my only option? Is it my best option? You're going to do research on the Internet. You're going to call

everybody you know who has even the remotest connection to medicine and say, Tell me. What do you know? At some point, the question will be called. If you go forward, it's not because you have moved beyond all doubt. There are no guarantees that the surgery will work. If you go forward, it is because you have moved beyond all reasonable doubt.

Ladies and gentlemen, a reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence that was presented with respect to some element of each of the crimes charged. A reasonable doubt must be a real doubt. It may not be an imagined one. It may not be a doubt that is manufactured to avoid carrying out an unpleasant responsibility.

You may not find Terry Walker guilty based upon a mere suspicion of guilt. The Commonwealth bears the burden of proving Terry Walker guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then Terry Walker is no longer presumed to be innocent. And you should find him guilty. On the other hand, if the Commonwealth has not met its burden, then you must find him not guilty.

[200] *Id.*

[201] *Id.*

[202] *See, e.g., Johnson v. Varner*, No. 01-2409, 2003 U.S. Dist. LEXIS 29449, at *8-10 (E.D. Pa. Sept. 4, 2003). The Commonwealth cites several unpublished Superior Court cases upholding Judge Hughes's reasonable doubt jury instruction at ECF Doc. No. 28 at 23-24.

[203] *Brooks v. Gilmore*, No. 15-5659, 2017 WL 3475475, at *5 (E.D. Pa. Aug. 11, 2017).

[204] *Id.* at *1, *4. Judge McHugh reasoned "one would need profound, if not overwhelming, doubt to deny a loved one their only or best opportunity for cure," and "any person of decency and morals would strive to put aside doubt when faced with a single life-saving option for a loved one." *Id.* at *4.

[205] *Id.* at *2.

[206] *Id.* at *9.

[207] Mr. Walker's counsel filed the Supplemental Amended Petition on August 27, 2017. We note no fault of the post-conviction counsel.

[208] ECF Doc. No. 28-1 at 64 (Exhibit D; *Commonwealth v. Walker*, 194 A.3d 687 (Pa. Super. Ct. 2018)).

[209] *Harris v. Reed*, 489 U.S. 255, 262 (1989).

---

[210] *Coleman,* 501 U.S. at 735 n.1; *Bey,* 856 F.3d at 236.

[211] *Martinez*, 566 U.S. at 14.

[212] *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019).

[213] *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 377 (3d Cir. 2018).

[214] *Workman*, 915 F.3d at 939.

[215] *Id.* at 938.

[216] *Preston*, 902 F.3d at 377.

[217] *Brooks*, 2017 WL 3475475, at *4.

[218] *Baxter v. McGinley*, No. 18-46, 2019 WL 7606222, at *2 (E.D. Pa. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 299517 (E.D. Pa. Jan. 17, 2020). The trial court jury instruction stated: "If you were advised by your loved one's physician that that loved one had a life-threatening illness and that the only protocol was a surgery, very likely you would ask for a second opinion. You'd probably get a third opinion. You'd probably start researching the illness, what is the protocol, is surgery really the only answer. You'd probably, if you're like me, call everybody you know in medicine: What do you know about this illness? What do you know about this surgery? Who does this surgery across the country? What is my option. At some moment, however, you're going to be called upon to make a decision: Do you allow your loved one to go forward? If you go forward, it's not because you have moved beyond all doubt. There are no guarantees. If you go forward, it's because you have moved beyond all reasonable doubt." *Id.*

[219] *United States v. Thayer*, 201 F.3d 214, 221 (3d Cir. 1999) ("[W]e consider the totality of the instructions and not a particular sentence or paragraph in isolation.").

[220] *Baxter*, 2019 WL 7606222, at *5.

[221] *Corbin v. Tice*, No. 16-4527, Doc. 42, Supp. Report & Recomm. (E.D. Pa. Jan. 15, 2019).

[222] *United States v. Isaac*, 134 F.3d 199, 202-03 (3d Cir. 1998) (upholding a jury instruction defining "reasonable doubt" as "the kind of doubt that would make a reasonable person hesitate to act").

[223] *Baxter*, 2019 WL 7606222, at *6.  Judge Hughes gave the same instruction in Mr. Walker's trial. N.T. March 2, 2007 Trial at 51-52.

[224] *Id.* at *6.

[225] *Workman*, 915 F.3d at 939.

[226] *Id.*

[227] *Strickland*, 466 U.S. at 689-692.

[228] *Workman*, 915 F.3d at 942.

[229] *Id.*

[230] *Strickland*, 466 U.S. at 690 (explaining the benchmark for judging any claim of ineffectiveness must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

[231] ECF Doc. No. 21 at 3.

[232] Post-conviction counsel's success in achieving a remand for an evidentiary hearing had far-reaching effects for post-conviction petitioners throughout the state, as the Superior Court's opinion lowered the burden to prove prejudice in cases where trial counsel allegedly gave improper advice on whether the defendant should testify. ECF Doc. No. 28-1 at 33.

[233] *Smith v. Murray*, 477 U.S. 527, 536 (1986).

[234] *Workman*, 915 F.3d at 942.

[235] *See, e.g, Johnson v. Varner*, No. 01-2409, 2003 U.S. Dist. LEXIS 29449, at *8-10 (E.D. Pa. Sept. 4, 2003). The Commonwealth cites several unpublished Superior Court cases upholding Judge Hughes's reasonable doubt jury instruction at ECF Doc. No. 28 at 23-24.

[236] *Strickland*, 466 U.S. at 689.

[237] ECF Doc. No. 21 at 18.

[238] *Id.*

[239] ECF Doc. No. 32 at 1.

[240] ECF Doc. No. 28-1 at 64 (Exhibit D; *Commonwealth v. Walker*, 194 A.3d 687, at *9 (Pa. Super. Ct. 2018) (relying on *Commonwealth v. Lawson*, 789 A.2d 252, 253 (Pa. Super. Ct. 2001) (explaining "where a case is remanded to resolve a limited issue, only matters related to the issue on remand may be appealed")).

[241] *Coleman,* 501 U.S. at 735 n.1; *Bey,* 856 F.3d at 236.

[242] *Coleman,* 501 U.S. at 750.

[243] 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[244] 28 U.S.C. § 2254(d).

[245] N.T. March 1, 2007 Trial at 176-177.

[246] ECF Doc. 28-1 at 3.

[247] 28 U.S.C. § 2254(d).

[248] *Miller-El*, 537 U.S. at 335-37 (citing 28 U.S.C. § 2253).

[249] 28 U.S.C. § 2253.

[250] *Miller-El*, 537 U.S. at 336.

[251] *Id.* at 327 (citing 28 U.S.C. § 2253(c)(2)).

[252] *Id.* at 323 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[253] Fed. R. App. P. 22(b)(1).